## CIRCUIT COURT OF THE CITY OF RICHMOND

Jeanne Wolf

v.

Thalhimer Brothers, Inc.

November 4, 1988

Case No. N-6134-4

By JUDGE RANDALL G. JOHNSON

Plaintiff brings this action under the provisions of the Virginians with Disabilities Act ("the Act"), Va. Code § 51.01-1 *et seq.*, seeking injunctive and other relief against Thalhimer Brothers, Inc., for what she claims was a discriminatory termination of her employment in February, 1987.[1] Defendant has filed a demurrer stating that the bill of complaint is not sufficient in law because plaintiff is not a "person with a disability" as that term is defined in the Act. For the reasons which follow, defendant's demurrer will be overruled.

The Virginians with Disabilities Act was enacted by the General Assembly in 1985. Section 51.01-41(A) of the Act provides that:

No employer shall discriminate in employment or promotion practices against an *otherwise qualified person with a disability* solely because of such disability. (Emphasis added.)

[1] Plaintiff's bill of complaint also seeks to state a cause of action under the federal Employee Retirement Income Security Act (ERISA). Plaintiff's counsel conceded at oral argument, however, that jurisdiction to hear such a complaint rests exclusively with the federal courts.

At the time of its enactment, and as it existed at the time of plaintiff's termination, § 51.01-3 of the Act defined an "otherwise qualified person with a disability" as:

> [A] person with a disability who is . . . qualified *without accommodation* to perform the duties of a particular job or position . . . . (Emphasis added.)[2]

That same section defines a "person with a disability" as:

> [A]ny person who has a physical or mental impairment which substantially limits one or more of his major life activities or has a record of such impairment and which . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion.

In the case at bar, plaintiff alleges that she was hired by defendant as a salesperson in May, 1974, and that she progressed from that position to that of associate buyer and then assistant buyer for several different merchandise lines and departments. In October, 1986, plaintiff was hospitalized for and diagnosed as having multiple sclerosis, a neurological disorder of unknown causation which produces symptoms including weakness, tingling, numbness, impaired sensation, and fatigue. Multiple sclerosis is characterized by a series of attacks and remissions.

In late November, 1986, plaintiff returned to work in her then-current position of assistant buyer in defendant's menswear department. Upon her return to work, plaintiff provided defendant with a statement from her neurologist indicating plaintiff's high level of fatigue and the resulting need for her to work a shortened 25-hour

---

[2] The Act was amended effective July 1, 1988, to delete the "without accommodation" language. For purposes of this decision, that amendment is immaterial.

week. The neurologist's statement further indicated his belief that this would be only a temporary measure, and that plaintiff would increase her tolerance and ultimately return to full-time employment. Plaintiff informed defendant that she was willing to accept a transfer to another position, or an adjustment of her responsibilities to part-time hours. According to plaintiff, defendant failed to offer, or even explore, either of these options, or any other option, as a reasonable accommodation of her disability. Instead, according to plaintiff, defendant conducted an unscheduled and unannounced review of her job performance one month after her return to work, which review resulted in a below-standard evaluation. Less than two months after the first review, defendant prepared an "updated" review which again indicated below-standard performance. Finally, on February 27, 1987, a final meeting was held with plaintiff at which time plaintiff was terminated. Plaintiff alleges that the reasons given by defendant for her termination were a pretext for firing her on the basis of her disability.

As previously indicated, § 51.01-41(A) makes it unlawful for an employer to discriminate against an "otherwise qualified person with a disability." Thus, in order to seek the protection of the Act, plaintiff must first demonstrate that she is an "otherwise qualified person with a disability." Significantly, the controlling definition existing at the time of plaintiff's termination mandates that in order to be an "otherwise qualified person with a disability," such person must be qualified to perform the duties of a particular job or position *without accommodation*. Defendant seizes upon this language to argue that since plaintiff's own doctor, as alleged in the bill of complaint, indicated a "need" for plaintiff to work only twenty-five hours a week, and since plaintiff offered to accept a transfer or shortened hours upon her return to work, plaintiff required an accommodation and was thus not an "otherwise qualified person with a disability." The court does not agree.

On demurrer, the factual allegations of the bill of complaint must be taken as true. *Ames v. American National Bank*, 163 Va. 1, 176 S.E. 204 (1934). While the bill of complaint does allege that plaintiff's doctor expressed a "need" for plaintiff to work shorter hours,

and that plaintiff offered to do so or to be transferred, there is no allegation that plaintiff ever failed to continue working the normal hours required of her then-current job. In fact, the bill of complaint specifically alleges that defendant did not grant her a transfer or shorten her hours, and that she continued working for an additional three months prior to being terminated. While defendant apparently cited plaintiff's poor job performance as the reason for her termination, whether that reason was the real reason or, as plaintiff alleges, merely a pretext for unlawful discrimination, is a factual matter. By the same token, it is also a factual question whether plaintiff was, at the time of her termination and notwithstanding her doctor's advice and her own willingness to transfer or work shorter hours, qualified to perform her then-current job. Such questions cannot be addressed by demurrer. Accordingly, the demurrer as to the state law cause of action must be overruled. As indicated in footnote 1 above, the demurrer to the ERISA cause of action will be sustained.